May it please the court, I'm Alan Burrow, Assistant U.S. Attorney from Boise, Idaho. I'd like to reserve three minutes for rebuttal. In this case, the United States is asking the court to reverse the district court which set aside Jennifer McClelland's convictions for arson and mail fraud and granted her a new trial. Ms. McClelland's case was previously before this court on direct appeal in which she attacked the sufficiency of the evidence this court affirmed. The Supreme Court subsequently denied certiorari. The district court set aside Ms. McClelland's convictions and granted a new trial here based on the erroneous finding that her defense attorney, Douglas Phelps, had his performance adversely affected by a conflict of interest occasioned by a joint representation. Mr. Phelps also represented Norma Holstrom, a potential witness in the case, a potential impeachment witness. Ms. Holstrom was charged in a separate court, Washington State Court, with an unrelated crime, an unrelated arson. And it came out during trial that Mr. Phelps also represented Ms. Holstrom. The only adverse effect identified by Jennifer McClelland in her 2255 pleadings and the only one found by the district court was that Mr. Phelps, when the conflict of interest came out, abandoned his attempt to call Ms. Holstrom. Now, that is simply not what the record shows. Holstrom was going to impeach a government agent who had taken a confession from McClelland on the grounds that Holstrom was going to testify that she had been coerced by this government agent either by promises of good treatment or some other type of coercion. Wasn't that a fact? Yes, Your Honor. All right. Well, in the end, she didn't testify. She did not testify, but the court concluded that after this issue first came up in the case that Mr. Phelps abandoned his attempt to call her. That is simply not what the record shows. And I agree with you. It's not what the record shows, but the bottom line remains the same. She didn't testify, and she was a potentially helpful witness to the defendant. But the reason why she did not testify was not because Mr. Phelps' representation was adversely affected. This case is completely unlike the Elliott case, which has been cited to this court in Ms. McClelland's 28J letter. It is much more like the Mett case. Indeed, if you were to plot Elliott here and Mett here, McClelland is on the other side of Mett. In the Mett case, as Judge Kaczynski pointed out in his concurring opinion, you had a joint representation, but the two clients were in separate courts charged with unrelated crimes. Their interests were not necessarily adverse. One's innocence did not depend upon the other one's guilt, which is the situation where you have in Elliott. In Mett, they were indifferent to one another. This goes beyond Mett here because not only were Ms. McClelland and Ms. Holstrom, their interests did not hinge on pinning guilt on the other one completely to the opposite end. Their interests, their mutual interests, depended upon the innocence of the other one. They had an arrangement where each one was going to testify at the other's trial. They were not fact witnesses. They had no knowledge of one another's facts. They were potential impeachment witnesses as to Agent Hart, and therefore the benefit for each client depended upon the other one's innocence. And I agree with you in every respect, but at the end of the day, we still have the problem of Holstrom not testifying. I mean, as I look at this, I can't figure out what the district judge was so concerned about and why he pursued it to the level he did. I mean, on one level, you want to be mindful of the fact that the witness has rights too and needs to be properly advised, but it's not very hard to understand what you just said, and yet Mr. Phelps made two different attempts to get her testimony in and got turned away. I mean, the government had nothing to do with this. This was the court's intervention. But at the end of the day, we're still left with the problem that Holstrom was a potentially useful witness who was not allowed to testify. But I would point out, Your Honor, and argue to the court that that is not an adverse effect. This is a witness that the court, in its discretion, could decide to exclude because of. . . Well, what authority does the court have to say, no, you can't call that witness? Because it was a cumulative witness, and that was the last thing that the district. . . I mean, you're trying to impeach a federal agent. I've let a defendant and one other person impeach. I'm going to stop there. It's cumulative. I don't think that would survive because it's not easy to impeach a federal agent. Your Honor, in this case, Ms. McClellan didn't have one confession. She had two, and the second one was to Jerry Allen Weaver. It was a private confession, a spontaneous confession to the father of her child, and there was a lot of corroborating evidence tending to show that Jerry Allen Weaver did not make this up, the detail he related to the agent, and it wasn't the agent. I hear that, but that's responding in a very different way. That's, in effect, saying, look, this whole thing is harmless error because there was overwhelming proof that the confession was legitimate. She was guilty. That doesn't speak to the question of whether the federal agent was credible or whether he had a pattern of extracting these confessions and so forth. On that particular issue, I mean, you can move away from the cumulative point, but I want to be very clear that doesn't solve the problem with regard to whether the witness should have been allowed to testify. That's a response of a different nature. I would respectfully submit, Your Honor, though, that that's not the issue before this Court. The issue before this Court is whether Mr. Phelps's representation was adversely affected because he abandoned his attempt to call her. He did not abandon his attempt to call her, and she was a cumulative impeachment witness. Mary Ann Henshaw had already testified. She was another one of these, an arson defendant in an unrelated case. Brandon Quigley, the live-in boyfriend of Ms. McClellan, had testified, and he was an even better witness because he claimed to be present when Mr. Hart met with Ms. McClellan, and he said that he heard him tell her that if she cooperated, things would go well for her. That's actual testimony of that. The problem for Ms. McClellan was not that one more cumulative witness didn't get to testify. The problem was the jury considered this, and they didn't buy it. That was her problem. Wasn't there – didn't the judge say that he wouldn't allow Holstrom to testify until Holstrom had independent counsel? That's what he said the first time the issue came up, Your Honor. And did she get independent counsel? Yes, she did. And Mr. Phelps brought it – attempted a second time to call her, and he advised the judge that she had conferred with independent counsel and still wanted to testify. And that's – and this second colloquy is never mentioned by Ms. McClellan in her 2255 pleadings, and it's never mentioned by the district court in its ruling. Your position is Mr. Phelps did indeed do everything he could to call Ms. Holstrom and agreed with the judge and followed the judge's procedure by getting her independent counsel, and still the judge wouldn't allow Ms. Holstrom to testify. So, therefore, it was not – the conflict that Phelps had was not causative of Holstrom not testifying. Holstrom didn't testify because of an aberrant ruling by the judge. That's absolutely correct, Your Honor, although I would not agree with the word aberrant, but everything else you said I would agree with 100%. It also has to be remembered that but for the joint representation, Ms. McClellan would have had no access to Holstrom's potential testimony. That's the only way she knew of the confidential information that Holstrom had, because of the joint representation. This is exactly like the Met case. It was a benefit of the joint representation which she lost at most. But I don't see where that really gets you anyplace because she's entitled to that benefit. She's entitled to present a witness who will help impeach the government's agent. But she's not entitled to – she would only know about that information because of the joint representation. You can't say to somebody, hey, I've got some information. Here it is. It's good stuff, but you can't use it. That doesn't help. The defendant's allowed to present for defense. It was confidential attorney-client-privileged information she wouldn't have had access to otherwise. Had Holstrom been represented by independent counsel, let's say somebody totally unrelated to Phelps, that doesn't guarantee that Holstrom would have testified. She still had a Fifth Amendment privilege. I'll reserve the rest of my time, Your Honor. We've used it, but we'll give you a minute anyway. May it please the Court, I'm Thomas Milby Smith on behalf of Jennifer McClellan, and you may tell from my voice that I am not in good voice today due to the unfortunate contraction of the latest cold that's going around. So I apologize for my demeanor and perhaps the use of a tissue during the argument for other purposes. I present to you on behalf of Jennifer McClellan that the government's position is without merit and has not risen to the level of showing clear error at the trial level. And I'm somewhat concerned about how I'm going to get this into the record because I don't see it's a part of the appeal, but I have here the copy of the transcript of that colloquy between Judge Froman Nielsen and Douglas Phelps. And I infer from your comment it's not in the excerpts of record. Is it in the district court record? I believe it's in the district court trial transcript. We have whatever is in the district court record is officially part of our record, even if it's not in the excerpts. Then I draw the Court's attention to on page 185, if I understand the transcript, the Court is asking of Mr. Phelps, and they're talking about this problem of the conflict and Norma Holstrom coming to testify, and the Court says on line 6, as I have it here, well, before I let her testify, I would like to talk to her lawyer here in open court. Does that have to be done now, Mr. Phelps? No, I don't think it does, Judge. And then later, Mr. Phelps says on the same page, all right, Judge, I could let her go home then and maybe get her tomorrow morning or something like that. Court, yeah, that is what I would suggest. By the way, that is in excerpts of record B, 1354 to 356. Your attention to detail is appreciated, Your Honor. That speaks volumes of several points in this particular case because you see Douglas Phelps had the duty and responsibility not to have a conflict with his client, and his responsibility required at this point in time that the judge is saying to you, Mr. Phelps, you better bring her lawyer in here, Ms. Holstrom's lawyer in here, and assure me that she is in fact waiving her right of self-incrimination, the Fifth Amendment right against self-incrimination, before I'm going to let her testify. Well, Mr. Phelps was representing her in the state action. And Mr. — as the record reflects, Mr. Phelps had made a memorandum to the state court saying that there was no actual conflict, that he could stay as her attorney. Was there an actual conflict? I can't find it. Well, I disagree, Your Honor. The actual conflict is there because, you see, Mr. McClelland is entitled to undivided loyalty of her attorney. And prejudice is — Well, yes, but, you know, I used to practice law. I had to have more than one client at a time to make a living. And I think people understand their lawyer has an obligation of undivided loyalty, but it's got other clients, too. And the question becomes whether those other clients have conflicts. And I can't find it here. It seems to me that these two people had interests that were exactly parallel. The conflict is that in the — we have a state action and a federal action, and McClelland in the federal action needs the testimony of Norma Holstrom as a part of the impeachment of a law enforcement officer. Your experience is the same as mine. If you're going to impeach a law enforcement officer, you just simply can't go in and say he said, she said. No, you have to come forward because the jury is going to give more credibility to a police officer. That's — I think we know that from our common experience. The burden is on the defendant. The burden is on Jennifer McClelland to go in there with all her guns loaded and her powder dry. And she's got to go in there with every ounce of evidence she can muster to rebut this coerced confession and the testimony of Lance Hart. It is clear from these witnesses that he did have, and I firmly believe this, a modus operandi and was making promises to these several different defendants in each of these actions, more than one, more than two. I hope I can find them. We don't need to buy onto that. What we need to buy onto is that the defendant is going to be benefited by having this additional witness's testimony. I think the answer to that is plainly yes. I go back to the question of what the conflict was and maybe a step beyond that. A judge properly concerned about a witness making — who's facing pending criminal charges in state court wants to make sure that witness understands what's happening. I mean, this is not like the Elliott case where the witness is, in effect, pleading guilty on the stand, perhaps without realizing it, but the judge doesn't know exactly what she's going to say. So he wants to make sure she's got independent counsels the way that she went. I think there are other things the district court could do to probe to make sure that the prospective witness understands. But what's the conflict? Where's Phelps in conflict by not — by representing both these people? Because Phelps wants to use for his client. McClellan needs this witness. And McClellan — look at Phelps as the center of the hub of the wheel. We have the state action. We have Phelps in the middle. We have McClellan and the federal action down below. And we have the — those arrows are going both ways. And we have McClellan over here signing an affidavit in the second or third day of the trial that talks about her understanding and such that she can testify in the state action. And then we have Holstrom, who is coming into court without the benefit of counsel, to convince the court she's waiving her right because she hasn't testified. And this testimony is not getting there because it is the vehicle through Mr. Phelps. And the vehicle, the center of that hub is Mr. Phelps, and is that we cannot get through this because Phelps is the person who's in control of it. Well, and Phelps — The real problem is the district judge is the person who's in control of it, and he doesn't let Holstrom testify. And if you recognize in his own memorandum opinion, and I've noted that he indicated on Exhibit L, page 9 of his memorandum opinion, he candidly pointed out in his memorandum opinion that upon reflection, he should have inquired further into the problems that was being presented to him in Jennifer McClellan's understanding that she was involved in an actual conflict, not a potential one. It was an actual conflict because Mr. Phelps has an undivided duty to her, and all he has to do is to make sure that Holstrom is getting in to testify. And he has these conflicts going back and forth because he's trying to represent her in the state court and saying there's no conflict, and clearly there is. The problem with Holstrom testifying in the federal court was that she would have to get up on the stand and testify as to the confession she had made to Hart, whereas if she were prosecuted in the state court, she could stay off the stand and not admit that she'd made the statement at all. Excellent observation. And she was so willing to waive that right because in both of these cases, Lance Hart's modus operandi is the same. Well, but she needed to have independent counsel, so said the judge. And your point is Phelps never produced the independent counsel to come into court and talk to the judge. Exactly. And then basically you can see in the record that there was a discussion. The judge wanted him to do that. And Phelps, he's the hub of the wheel, Your Honor. That is the conflict. And Jennifer McClellan, by the rule of law, is entitled to the un- I'm sorry. I think the conflict was potential, and that's what Judge Baio has helped me point out. It was potential. She had to take the stand before the conflict would arise. He didn't want her to take the stand and have the conflict arise unless she knew from her own counsel that she was running that risk. And you can determine potential at that point, but it became actual when it didn't occur. And Jennifer McClellan needed that testimony, and perhaps others if we can, because I think it will be plainly pointed out in this trial that there was no physical evidence to support the coerced confession. Have I consumed my time? You've got a minute and a half left, but you don't have to keep talking. You've got other things to say. Well, I don't want to. I do not want to bend your ear to more than you want to hear. I think we understand your case, unless you do have something further you want to communicate. I think our discussion tells me that you have. You do understand our position. Thank you. Earl? I would point out to the court that the judge's exclusion of Ms. Holstrom as being cumulative is not an issue before this court. Ms. McClellan had a direct appeal. She did not raise that issue. She raised the issue of sufficiency of the evidence, and this court found that there was sufficient evidence. The colloquy that my esteemed co-counsel here quoted from between the judge and Mr. Phelps was the second time Mr. Phelps tried to put Holstrom on the stand. The first time, the judge says, I don't want her to testify unless she has independent counsel. Mr. Phelps took care of that. The second time he tried to call her, he said, Your Honor, she's out in the hallway. She's conferred with independent counsel. She still wants to testify. On that occasion, the judge made two observations. He said, Isn't what she's testifying about, isn't it cumulative? Haven't you already had a witness? Mary Ann Henshaw testified about the same thing. And the other thing he said was, I actually want to talk to her independent counsel. So what the judge was requiring went up. Now, the only evidence we have of record as to how this matter was finally resolved came from the testimony of Douglas Phelps at the 2255 hearing. He testified that the next day there was a meeting, a hearing, if you will, in chambers off the record in which the court ultimately ruled that she was a cumulative witness and just avoided the issue and the Fifth Amendment issue altogether. He testified to that effect. Now, the prosecutor, Nancy Cook, she did not testify at the hearing, but she put on the record her recollection, which it's obvious she agreed with Mr. Phelps, and she said that after this chambers meeting she requested that the results of it be placed on the record, and that never occurred. Was there ever any record of Judge Nielsen talking to the independent counsel? Who was the independent counsel? The name is stated by Mr. Phelps, Your Honor, but it's in the record. I cannot remember the name of it, but there's no record of the judge talking to independent counsel. Isn't that what the judge wanted to do before Holson took the stand, said, I want to talk to her independent counsel, make sure that she really understands what her situation is? Right. And that wasn't done. Well, Phelps testified that this was taken up again. Not this was taken up. He testified that she's out in the hallway with counsel and she's ready to testify. That doesn't mean the judge talked to independent counsel. Later on, off the record, I'm going to sustain the objection. I'm not going to allow her to testify because she's cumulative. That's not on the record. But my question to you, and maybe there isn't any record of this, did the judge talk to independent counsel? Your Honor, my understanding is that the next morning independent counsel was there for the purpose of answering. Out in the hallway or in the courtroom? Well, independent counsel did not come back into chambers, to the best of my knowledge, but was available. The judge just solved the issue by saying this is a cumulative witness. The judge changed his mind. He said, I don't have to talk to independent counsel any longer. I've now made my mind up that her testimony, Holson's testimony, is cumulative, and so I'm not going to let her testify. I don't think he changed his mind, Your Honor, because he said two things. The last time this issue came up on the record, he said two things. Isn't this witness cumulative? And if she is going to testify, I want to talk to independent counsel. Phelps testified that the judge, by the next day, just said the witness is cumulative. She's not going to take the stand. But that ruling, you know, which would be in the discretion of the trial judge, it would be an abuse of discretion issue before this court, that issue is not before this court. The issue is whether Mr. Phelps had an actual conflict of interest which resulted, adversely affected his performance, and there is not a shred of evidence in this record of that. Mr. Burr, the problem when you want to establish a pattern of conduct is that you have to have cumulative evidence. You've got to have A who says this is what happened to me, and you've also got to have B who says this is what happened to me, and it's the same thing. And whether you call it cumulative or not, in this case, on this record, what wanted to be proved, I think, required, and you can correct me, required more than one person to say it because she wanted to establish a pattern of behavior. Your Honor, I cannot fault your reasoning. I cannot fault your reasoning in that regard. But again, the trial judge's, that ruling is not before this court. I agree that it's not before us, but when we look to see if there was a conflict and we see that the person who could have supported the allegation is not there and couldn't testify, and couldn't testify because she was represented by the same counsel who wanted to protect her, or who should have wanted to protect her, and we have to decide on the record that's before us, don't we? That's correct, Your Honor, but Mr. Phelps did all he could to put the witness on the stand. And one of the items of confusion that runs throughout this record, and I've detected it again this morning in counsel's argument, is confusion over what an actual conflict is. The Supreme Court penned this down in the Mickens case. An actual conflict is a conflict that adversely affects counsel's performance, which means a significant worsening, according to the Met case. That's what an actual conflict is. If there is no adverse effect, there's no actual conflict. Well, the adverse effect was that Phelps didn't produce the independent counsel in the courtroom to testify when the judge first asked for it. Well, that's not in the record, Your Honor. I mean, first the judge only asked that she consult with independent counsel. Mr. Phelps made sure that happened. Then the judge upped what he wanted, which was I want to talk to independent counsel. Mr. Phelps then said that later on the judge in chamber said the witness is cumulative. She won't be called. Thank you. We have a real set of unusual factual circumstances today, and this case continues that pattern. We thank both counsel for your argument. The case just argued is submitted.
judges: Farris, Clifton, Bea